**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0438n.06

Case Nos. 16-5237, 16-5241

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Aug 01, 2016 |
| | | DEBORAH S. HUNT, Clerk |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ROBERT HATTAWAY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: MOORE, McKEAGUE, and DONALD, Circuit Judges.

**McKEAGUE, Circuit Judge.** Robert Hattaway engaged in three different fraudulent schemes involving farm benefits. For his actions, he was convicted of one count of bank fraud, nineteen counts of making false statements to a crop insurance company, one count of mail fraud, two counts of making false statements to the Farm Service Agency, and two counts of using false documents. He appeals, claiming that there was insufficient evidence to support any of his convictions and that his sentence of 37 months' imprisonment is unreasonable. We disagree, and so we AFFIRM his convictions and sentence. Hattaway also brings a claim that a prior indictment should have been dismissed with prejudice. We DISMISS this claim for lack of subject-matter jurisdiction.

**I**

*Loan from Homeland Community Bank.* In 2005, Homeland Community Bank issued Hattaway an agricultural loan for $160,000. Hattaway sold crops to Kokomo Grain, and Kokomo Grain issued checks made out to both Hattaway and Homeland as payment. From September to October 2005, Hattaway brought six of these checks to Homeland and properly negotiated the loan amount. On six following occasions, however, Kokomo issued checks to Hattaway and Homeland, but the checks were subsequently cashed bearing only Hattaway's name. Hattaway's conviction for bank fraud is for the last of these checks—on February 16, 2006, a check for $506.52 was cashed at Hullett's Texaco listing only Hattaway as payee and endorsed with only Hattaway's signature.

*Insurance Claim with Hudson Insurance Company.* Hattaway submitted a claim for over $100,000 to Hudson Insurance Company for reimbursement for soybean losses in 2008. Hudson paid Hattaway the amount requested, but it thereafter sought documentation to support the claim.[1] In response to Hudson's request, Hattaway sent nineteen falsified receipts, which serve as the bases for his convictions of nineteen counts of making false statements for the purpose of influencing the Federal Crop Insurance Corporation in connection with an audit.

*Crop Benefits from the Farm Service Agency.* Hattaway sought federal farming disaster benefits and so submitted crop acreage reports for 2008 and 2009, claiming to have farmed certain fields in Warren County. The county committee declared him ineligible for benefits after determining that Hattaway was claiming to have farmed fields in 2009 that he did not actually farm. Hattaway disagreed with this conclusion and sought a hearing with the Warren County Farm Service Agency. The Farm Service Agency was unpersuaded, and so Hattaway appealed

---

[1] Any claim submitted to Hudson for an amount over $100,000 automatically triggered an audit.

to the United States Department of Agriculture's National Appeals Division. During his appeal, Hattaway mailed two falsified receipts to the National Appeals Division. He was convicted of mail fraud, two counts of making false statements, and two counts of using false statements.

Hattaway was sentenced to 37 months' imprisonment followed by three years' supervised release. This timely appeal followed.

## II

Hattaway claims that there is insufficient evidence to support any of his twenty-five convictions. "This court reviews de novo a claim of insufficient evidence, assessing the evidence 'in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015) (quoting *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008)). Thus, we make all reasonable inferences and resolve all issues of credibility in favor of the jury's verdict. *Id.*; *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A defendant challenging the sufficiency of the evidence has a "very heavy burden." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)). "Circumstantial evidence 'is entitled to the same weight as direct evidence . . . .'" *Mack*, 808 F.3d at 1080 (quoting *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)). Circumstantial evidence alone is sufficient to sustain a conviction and "need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)).

### A.     Conviction Arising from Loan from Homeland Community Bank

In 2005, Homeland Community Bank issued Hattaway an agricultural loan for $160,000. The loan agreement involved Homeland, Hattaway, and Kokomo Grain. Hattaway agreed to sell

Kokomo Grain 50,000 bushels of corn and agreed to pay back the loan to Homeland in the span of one year, pledging crops and equipment as collateral. Homeland sent Kokomo Grain a letter indicating that they had an interest in any crops that Hattaway sold to Kokomo Grain, which Kokomo Grain officially acknowledged. Kokomo Grain, in an effort to protect the bank's collateral, was to issue checks to both Hattaway and Homeland, which would require both payees to negotiate and endorse checks for deposit. Hattaway was to bring the checks to Homeland and pay on his loan account.

From August 2005 to February 2006, Kokomo Grain issued the checks.[2] For each check, Kokomo Grain retained a carbon copy. Their computer system would allow the entry of only one payee for each check so, after printing the check with Hattaway's name, a Kokomo Grain employee would insert the check and the carbon copy into a typewriter and add Homeland as a second payee. On six occasions in September and October 2005, Hattaway brought these checks to Homeland and properly negotiated the payment amount. The following six times Kokomo Grain issued checks to Hattaway and Homeland, Homeland was removed from the payee line prior to deposit. For each of these last six checks, Hattaway was charged with a count of bank fraud in violation of 18 U.S.C. § 1344. A person commits bank fraud if he "knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution." 18 U.S.C. § 1344(1).[3] A jury convicted Hattaway of only the sixth count of bank fraud, for a check for $506.52 cashed at Hullett's Texaco on February 16, 2006.

---

[2] Kokomo Grain employee Bruce Brandon testified that Homeland was not listed on several initial checks but that, beginning in September 2005, he consistently listed both Hattaway and Homeland as co-payees.

[3] Although Hattaway was charged with violating 18 U.S.C. § 1344(1) & (2), the government argues on appeal that "[t]he fraud in this case violated the portion of the bank fraud statute" encompassed in § 1344(1). Appellee Br. 35.

*Knowingly Execute a Scheme to Defraud.* Hattaway argues that no reasonable juror could have found that he had knowingly executed a scheme to defraud because there was no evidence presented at trial that he altered the check, that he signed the check, or that he cashed the check. Circumstantial evidence, however, is sufficient to sustain a conviction. Kokomo employee Bruce Brandon testified that the check had originally listed both Hattaway and Homeland as payees. The carbon copy of the check confirmed this. Hattaway had previously received checks from Kokomo Grain that listed both himself and Homeland as payees, and he had brought these checks to Homeland and properly negotiated the payment amount. This check, however, was not brought to Homeland—it was cashed at Hullett's Texaco. And when it was cashed, the check listed only Hattaway as payee. Although Hattaway claims that there was no evidence presented at trial that he signed the check, the check bore a signature in his name, his attorney expressly stated that he was not contesting whether Hattaway endorsed the check, and the senior vice president and chief financial officer of Homeland testified that he had compared the signatures in this case to a known signature of Hattaway and believed that Hattaway had endorsed the check.

*Intent to Defraud.* Hattaway also argues that no reasonable juror could have found that he had intended to defraud a financial institution, as required by 18 U.S.C. § 1344(1), because there was no evidence presented at trial that he intended to expose Homeland to any loss. On February 2, 2006, a check for $506.52 from Kokomo Grain was cashed at Hullett's Texaco listing only Hattaway as payee and endorsed with Hattaway's signature. Evidence was presented at trial that the check was originally made out to Hattaway and Homeland. Hattaway had previously brought checks from Kokomo Grain listing both himself and Homeland as payees to Homeland to negotiate the payment amount. Hattaway's $160,000 loan from Homeland had

matured on January 20, 2006, but Hattaway had not repaid the loan in full with interest as agreed. Given this evidence, a rational trier of fact could have found that Hattaway had intended to defraud Homeland Community Bank.

**B.      Convictions Arising from Insurance Claim with Hudson Insurance Company**

In 2008, Hattaway filed an insurance claim for soybean losses with Hudson Insurance Company, a reinsurance company insured by the Federal Crop Insurance Corporation. The net payable amount to Hattaway for this claim was $134,397. Because the claim was in excess of $100,000, a certified letter was sent to Hattaway in February 2009 requesting production receipts from 2005, 2006, and 2007 to determine an estimated potential yield of soybeans in 2008. Upon receiving the letter, Hattaway called Hudson and stated that he had not planted soybeans in 2005. He was instructed to submit information for 2006 and 2007 and was given an extended deadline to do so.

In March 2009, Hudson's national review manager received an email from Hudson's agent's employee Linda Hughes that stated "Robert Hattaway requested I forward the attached file to you." R. 207, Trial Tr. at 16, Page ID 2775. The attachments were nineteen receipts for crop year 2006, including five receipts from Smith Grain and fourteen from Kokomo Grain. At trial, a Smith Grain employee testified that the five purported Smith Grain receipts were not issued by Smith Grain in 2006. He identified several legitimate Smith Grain receipts issued to Hattaway in 2002 and explained that the purported 2006 receipts were identical to the legitimate 2002 receipts, other than a forged "2006." Likewise, a Kokomo Grain employee testified that the fourteen purported Kokomo Grain receipts were fraudulent. He testified that Kokomo did not buy any soybeans from Hattaway in 2006 and that Kokomo Grain's 2006 receipts used a different form. He also noted that the sample numbers on the receipts should have been unique

but were the same on all of the purported receipts, and that they appeared to have been modified from one legitimate receipt that Kokomo Grain issued to Hattaway in January 2009. Hattaway was convicted of nineteen counts of making false statements to a crop insurance company in violation of 18 U.S.C. § 1014, one for each of the receipts submitted to Hudson. A person commits this crime if he:

> knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of the . . . Federal Crop Insurance Corporation or a company the Corporation reinsures . . . , upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor.

18 U.S.C. § 1014.

On appeal, Hattaway does not contest that a false statement in an insurance claim would fall under the purview of 18 U.S.C. § 1014. Instead, he argues that, because the term "audit" is not contained in § 1014, the nineteen false statements he made after Hudson requested supporting documents for his insurance claim cannot serve as the basis of his false statements convictions. We disagree. Hattaway's attempts to distinguish such "audits"—by claiming that the audit only "was to determine whether Hudson would be reinsured by [the Federal Crop Insurance Corporation] and had nothing to do with Hattaway's *application*," Appellant Br. 38 (emphasis added)—are unpersuasive. Any distinction between a false statement in an insurance claim and a false statement in supporting documents for the claim is a distinction without a difference. The purpose of submitting the nineteen false receipts was to convince Hudson that Hattaway was entitled to the insurance payment.

Hattaway also argues that there was insufficient evidence to support these nineteen convictions for making false statements because "[t]here was no testimony presented that proved

that Hattaway directed the allegedly falsified receipts be sent to Hudson as part of the audit."
Appellant Br. 38. But there was sufficient circumstantial evidence by which a rational juror could find that he had directed the false receipts to be submitted to Hudson. During the audit on Hattaway's insurance claim, Hudson sought documentation from Hattaway. Hudson mailed Hattaway a letter in February 2009 asking for "copies of proof of the production that [he] would have had from previous crop years" 2005, 2006, and 2007. R. 207, Trial Tr. at 25, Page ID 2784. The letter instructed Hattaway that he was expected to respond within one week, but Hattaway called Hudson and received an extension. On March 10th, Hudson's national review manager received an email from Hudson's agent's employee Linda Hughes that read "Robert Hattaway requested that I forward the attached file to you." R. 207, Trial Tr. at 16, Page ID 2775. The attachments contained what purported to be Hattaway's 2006 production records, including falsified records of soybean sales to Smith Grain and Kokomo Grain. A rational factfinder could find that Hattaway had directed that the false receipts be sent to Hudson based off of this evidence.

### C.      Convictions Arising from Seeking Crop Benefits from the Farm Service Agency

Hattaway sought federal farming disaster benefits for crop year 2009. To that end, he submitted crop acreage reports for 2008 and 2009. The county committee determined that Hattaway was claiming to have farmed fields in 2009 that he did not actually farm and that were, in fact, farmed by others. Thus, the committee declared him ineligible for benefits. Hattaway appealed this conclusion to the Warren County Farm Service Agency, but the Farm Service Agency was unpersuaded. Hattaway next appealed to the United States Department of Agriculture's National Appeals Division. Hattaway mailed documents to the National Appeals Division in support of his claim, including materials that proved to be falsified: a receipt

purporting to show that he had purchased 1,550 bushels of wheat seed from C & C Farms, a receipt purporting to show that he had paid Womack Seed Farms to have 1,550 bushels of wheat cleaned, and a check purporting to show payment to Womack Seed Farms. Hattaway was convicted of one count of mail fraud in violation of 18 U.S.C. § 1341, two counts of making false statements to the Farm Service Agency in violation of 18 U.S.C. § 1014, and two counts of using false documents in violation of 18 U.S.C. § 1001(a)(3).

### i. Mail Fraud

Hattaway was convicted of one count of mail fraud in violation of 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006). Hattaway mailed to the National Appeals Division falsified documents: a fake receipt that showed he had purchased 1,550 bushels of wheat seed from C & C Farms and a fake receipt that claimed he had paid Womack Seed Farms to have 1,550 bushels of wheat cleaned.

Hattaway argues on appeal that there was no scheme to defraud because his appeal to the National Appeals Division was only to establish his eligibility to apply for benefits, not to actually apply for benefits. This is, yet again, a distinction without a difference. One of the threshold inquiries for agricultural disaster assistance is to be a qualifying producer and so Hattaway's fraudulent attempt to establish his eligibility was the first step in applying for benefits. There was sufficient evidence by which a juror could find that Hattaway had submitted false documents to the National Appeals Division in order to convince the Division that he had farmed two pieces of land that he had not farmed. Hattaway argues that the receipts were "not necessary to determine producer eligibility" and so submitting them to the National Appeals

Division "could not be made with the intent to defraud." Appellant Br. 42. It is irrelevant whether the receipts were necessary. Submitting false documents to an agency for the purpose of influencing its decision is acting with the intent to defraud that agency. Thus, there was sufficient evidence for the jury to have convicted Hattaway of mail fraud.

### ii. False Statements to the Farm Services Agency

Hattaway was also convicted of two counts of making false statements to the Farm Service Agency in violation of 18 U.S.C. § 1014. The two counts are for the two fake receipts he submitted to the National Appeals Division. He maintains that he did not intend to influence the agency to grant him benefits because the purpose of the proceeding was only to determine if he was a qualifying producer. As discussed above, however, that inquiry was the threshold question to his ability to apply for benefits. He also argues that the receipts were not necessary to determine producer eligibility, but 18 U.S.C. § 1014 does not require that the statements to the Farm Service Agency be necessary, only that they be false and made for the purpose of influencing the agency.

Hattaway next claims that the statements were not false. First, he argues that these receipts do not contain factual assertions that are capable of being characterized as true or false, citing *Williams v. United States*, 458 U.S. 279 (1982). *Williams* involved a check-kiting scheme. The Supreme Court held that the checks were not factual assertions as to the amount of funds in an account, but rather "served only to direct the drawee banks to pay the face amounts to the bearer, while committing petitioner to make good the obligations if the banks dishonored the drafts." *Id.* at 284. Here, however, the statements are amenable to "confirmation or contradiction." *United States v. Kurlemann*, 736 F.3d 439, 445 (6th Cir. 2013) (citing *Williams*, 458 U.S. at 284). The first statement was a receipt dated October 26, 2008 showing that

Hattaway had purchased 1,550 bushels of wheat seed for $10,075 from C & C Farms. The second statement was a receipt dated October 28, 2008 showing that Hattaway had paid Womack Seed Farms $1,937.50 to have 1,550 bushels of wheat cleaned. These statements could be proven false if Hattaway had in fact not purchased 1,550 bushels of wheat seed from C & C Farms on October 26, 2008 and had not paid Womack Seed Farms to have 1,550 bushels of wheat seed cleaned on October 28, 2008. And, despite Hattaway's protestations, a rational trier of fact could have so found. Steve Stubblefield, who worked for the Warren County Farm Service Agency, testified that he was unable to verify the C & C Farms receipt. Renee Clift testified that she and her husband operated C & C Farms and that it was not a receipt from C & C Farms, noting that the address listed the incorrect town and zip code, that C & C Farms did not sell the specific type of wheat listed on the receipt, that Hattaway was not in their database as a customer, and that they used a different format to generate receipts. As for the second receipt, Darren Womack of Womack Seed Farms testified that he did not believe the receipt for seed-cleaning was his because he does not clean the specific type of wheat listed and he did not receive payment for it. Thus, there was sufficient evidence for the jury to have convicted Hattaway of making false statements to the Farm Service Agency.

### iii. Use of False Documents

Finally, Hattaway was convicted of two counts of using false documents in violation of 18 U.S.C. § 1001(a)(3), which holds criminally liable "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." Despite Hattaway's arguments to the contrary, there was an adequate basis for the jury to have found that

Hattaway acted willfully—there was evidence presented that Hattaway had fabricated the receipts and then submitted them to the National Appeals Division in order to influence its decision on whether he was eligible to apply for benefits.  To the extent that Hattaway argues that there was insufficient evidence of materiality, we disagree.  The National Appeals Division was determining if Hattaway was a crop producer in the year 2009, and Hattaway submitted two falsified receipts purporting to show that he had purchased and cleaned wheat seed that year.  This is sufficient evidence for a juror to have found that the false documents were material.  And, as discussed above, there was sufficient evidence by which a rational juror could find that the documents were false.  Thus, there was sufficient evidence for the jury to have convicted Hattaway of using false documents.

## III

In addition to bringing claims challenging his convictions, Hattaway argues that his sentence is both procedurally and substantively unreasonable.  The district court calculated his Guidelines range to be 30 to 37 months' imprisonment and sentenced Hattaway to 37 months' imprisonment followed by three years' supervised release.

### A.     Procedural Reasonableness

We review the procedural reasonableness of a sentence for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  The district court must correctly calculate the applicable Guidelines range; must treat the Guidelines as advisory, not mandatory; must consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a); may not select a sentence based on clearly erroneous facts; and must adequately explain the chosen sentence to show that it has considered the parties' arguments and has a reasoned basis for the sentence.  *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014); *Rita v. United States*, 551 U.S. 338, 356 (2007).

"We review the sentencing court's legal conclusions *de novo* and its findings of fact for clear error." *United States v. Cunningham*, 669 F.3d 723, 728 (6th Cir. 2012).

Courts are instructed to use the greater of actual or intended loss when calculating the base offense level in fraud cases. U.S.S.G. § 2B1.1, cmt. (n.3(C)). Where losses are not easily quantifiable, the district court need only make a reasonable estimate. *Id.* We review the district court's methodology for calculating loss *de novo* and its factual determination of the loss amount for clear error. *United States v. Collins*, 799 F.3d 554, 592–93 (6th Cir. 2015); *United States v. Greco*, 734 F.3d 441, 444 (6th Cir. 2013); *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006). "In challenging the court's loss calculation, [a defendant] must carry the heavy burden of persuading this Court that the evaluation of the loss was not only inaccurate, but outside the realm of permissible calculations." *United States v. Gray*, 521 F.3d 514, 542 (6th Cir. 2008) (quoting *United States v. Hamilton*, 263 F.3d 645, 654 (6th Cir. 2001)) (alteration in original).

The district court determined the applicable Guidelines range to be 30 to 37 months' imprisonment. Hattaway claims that this was based off of an incorrect offense level because the district court incorrectly calculated the amount of loss. The district court determined the loss to be $506.52 for the loss to Homeland Community Bank and $134,397 for the loss to Hudson Insurance Company. The loss was thus more than $95,000 but less than $150,000, and so it triggered an eight-level increase in Hattaway's base offense level. *See* U.S.S.G. § 2B1.1(b)(1).

*Loss to Homeland Community Bank.* Hattaway was convicted of defrauding a financial institution. The district court found the loss to Homeland Community Bank to be $506.52. Hattaway claims that this loss is "purely speculative." Appellant Br. 55. But Hattaway was convicted of bank fraud for cashing a check for $506.52. The district court did not clearly err in finding that the loss to Homeland was equal to the check amount.

*Loss to Hudson Insurance Company.* Hattaway submitted a claim for insurance to Hudson Insurance Company. Hudson paid Hattaway, but then asked for supporting documents to prove Hattaway's claim. Hattaway submitted nineteen fraudulent receipts purporting to show his 2006 soybean sales. Hattaway was convicted of nineteen counts of false statements. The district court found the loss to Hudson Insurance Company to be $134,397, which represented the total indemnity payment. Hattaway argues that the loss should only have been "the difference between what he would have received had he not provided any documents to Hudson and what he actually received." Appellant Br. 56. Thus, Hattaway argues, "Hudson Insurance Company either owes Defendant $3,873.27 or $1,344.17 or, worse case scenario, Defendant would owe Hudson $1,838.25.1 [sic]." Appellant Br. 59 (citations omitted). It strains credulity for Hattaway to claim that, despite his fraud, the bank was not harmed and in fact owes Hattaway more money. Hattaway argues that, had he sent his claim in without supporting documentation, Hudson would have calculated the amount to pay out based off of the county's average yield. *See* 7 C.F.R. §§ 400.55, 1437.102; R. 207, Trial Tr. at 44, Page ID 2803. But he *did not* submit his claim without supporting documentation. He submitted his claim with nineteen fraudulent receipts in an effort to keep the $134,397 that Hudson had paid him. We also note that during its investigation into Hattaway's claim and these nineteen receipts, Hudson requested the indemnity back but Hattaway did not return it. R. 207, Trial Tr. at 42–43, Page ID 2801–02. Therefore, the district court did not err when it concluded that the entire indemnity payment was the appropriate loss amount. Thus, Hattaway's sentence is procedurally reasonable.[4]

---

[4] Hattaway argues without explanation that his "total offense level should be 7 and his advisory guidelines range is 0–6 months." Appellant Br. 62. This would imply that he is arguing that his base offense level should not be increased at all for the amount of loss (discussed above), that he should not have received a two-level increase for relocating a fraudulent scheme to another jurisdiction to evade law enforcement (an argument he never mentions on appeal), and that his

## B.      Substantive Reasonableness

To qualify as substantively reasonable, a sentence "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (per curiam) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). We review a sentence's reasonableness for abuse of discretion. *Gall*, 552 U.S. at 51; *United States v. Smith*, 516 F.3d 473, 477–78 (6th Cir. 2008).

Hattaway's within-Guidelines sentence of 37 months' imprisonment is presumptively reasonable. *United States v. Jeter*, 721 F.3d 746, 757 (6th Cir. 2013). Hattaway claims that he should have received a below-Guidelines sentence of zero months' imprisonment because "[p]robation is a sentence 'sufficient, but not greater than necessary' to fulfill the purpose of the sentencing." Appellant Br. 63 (quoting 18 U.S.C. § 3553(a)). He brings only two arguments in support of this: (1) his criminal history is overstated and (2) the non-violent nature of his offenses. Hattaway has prior convictions for vandalism, domestic assault, aggravated perjury, false reporting, and possession of a controlled substance with intent to deliver. Hattaway does not contest this history, but rather argues that his criminal history category overstates the severity of his prior offenses. The district court did not abuse its discretion in rejecting Hattaway's argument that his criminal history category of III overstated the severity of his criminal history.

criminal history category should be reduced from III to I because it overstates his criminal history (a claim the district court did not abuse its discretion in rejecting).

Nor did the district court abuse its discretion in deciding that his convictions warranted a term of imprisonment even though they were non-violent. Thus, Hattaway has not overcome the presumption that his within-Guidelines sentence of 37 months' imprisonment is reasonable

**IV**

Finally, we address Hattaway's claim that the district court should have dismissed his 2011 indictment with prejudice. The district court dismissed that case without prejudice due to a Speedy Trial Act violation on April 23, 2013. A dismissal of an indictment without prejudice due to a Speedy Trial Act violation is not a final, appealable order. *United States v. Yeager*, 303 F.3d 661, 665 (6th Cir. 2002). The proper time to appeal the dismissal of the indictment without prejudice is *after* a judgment of conviction under a second indictment. *See Parr v. United States*, 351 U.S. 513, 518–19 (1956); *Yeager*, 303 F.3d at 665.

We must determine, then, if Hattaway's convictions in the present case were a final judgment as to the dismissal of his 2011 indictment. If not, we do not have subject-matter jurisdiction to hear his claim that the indictment should have been dismissed with prejudice. *See Yeager*, 303 F.3d at 665. Neither party has argued that we do not have jurisdiction to hear this claim, but we have an independent obligation to determine our own subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)) (alterations in original)); *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (noting that "it is beyond question that federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists").

The 2011 indictment included five counts of making false statements to a crop insurance company and four counts of mail fraud. Hattaway's convictions here, however, were for *different crimes* than those alleged in his 2011 indictment. The five counts of false statements in his 2011 indictment were for five instances of "false and fraudulent production worksheets" that overstated crop failures to insurance companies. R. 1, Indictment at 3, Page ID 3 (2011). There were two statements on December 20, 2007; one statement on July 24, 2008; and two statements on October 9, 2008. He was not charged with these false statements in the 2014 indictment that led to his convictions. The false statements in his 2014 indictment (for which he was convicted) were for nineteen fraudulent receipts, all dated in 2006.

The four counts of mail fraud in his 2011 indictment were for "knowingly caus[ing] to be delivered by United States mail" four checks from reinsurance companies. *Id.* at 4, Page ID 4 (2011). He was not charged with these four counts in his 2014 indictment. The one count of mail fraud in his 2014 indictment (for which he was convicted) was for Hattaway himself mailing false documents to the National Appeals Division.

We note too that even had his 2011 indictment been dismissed with prejudice, it would not have barred his 2014 indictment. The Speedy Trial Act requires dismissal of only "*such* charge against that individual contained in *such* complaint." 18 U.S.C. § 3162(a)(1) (emphasis added). It does not prevent later prosecution for different crimes even if the "subsequent charges . . . arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." *United States v. Napolitano*, 761 F.2d 135, 137–38 (2d Cir. 1985).

Because his convictions were for different crimes than those alleged in his 2011 indictment, Hattaway's convictions did not make the dismissal of his 2011 indictment a final,

appealable order.  Therefore, we do not have jurisdiction over his claim that his 2011 indictment should have been dismissed with prejudice.

## CONCLUSION

Accordingly, we AFFIRM Hattaway's convictions and sentence.  We DISMISS for lack of jurisdiction Hattaway's appeal from the district court's dismissal of his 2011 indictment without prejudice.