**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0699n.06

**No. 14-3580**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 16, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| JEREMY A. MACK, | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

BEFORE: GRIFFIN and DONALD, Circuit Judges; and TARNOW, District Judge.[*]

GRIFFIN, Circuit Judge.

Following a six-day trial, a jury found defendant Jeremy Mack guilty of, among other offenses, conspiracy to commit an offense against the United States and sex trafficking. On appeal, defendant challenges the sufficiency of the evidence pertaining to those convictions, as well as two pre-trial evidentiary rulings and a sentencing enhancement. We affirm.

I.

According to the evidence presented at trial, defendant ran a criminal enterprise out of his home with help from a coconspirator, Ashley Onysko. That enterprise involved not only distributing heroin and cocaine, but also recruiting young female addicts to prostitute themselves

_____

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

for his benefit. At trial, the government presented testimony from three of the four sex trafficking victims.

The first victim to testify, "MB," recalled that she met Mack through a friend and began buying heroin from him. When MB ran out of money to purchase drugs, she—at Mack's suggestion—started having sex with him in exchange for drugs. MB thought that when she had sex with Mack, the heroin he provided was free. Eventually, however, Mack told MB that the drugs had not been free and that MB owed a significant drug debt, which she was obligated to repay by prostituting herself. Initially, MB was reluctant to prostitute herself, but "after [she] became . . . aware of . . . [her] drug debt and how bad it was" she agreed.

After a few weeks of prostituting herself for Mack, MB began staying at his house full time, only leaving for prostitution sessions. MB testified that she was afraid of defendant and that she felt she "couldn't [leave]" because of the drug debt she owed him. In her words, "the only way to pay that [debt] was to go on these [prostitution] appointments and bring the money back to him." Mack controlled not only her heroin supply—which she needed to avoid the painful symptoms of heroin withdrawal—but her access to food, toiletries, and clothing as well. Defendant kept guns at his home and, according to MB, was also prone to violence. On one occasion, Mack struck MB "[b]ecause [she] was talking back to him[,]" splitting her lip open. In addition, MB testified to seeing Mack choke another victim, "CB." According to MB, defendant once said that "he wasn't afraid to kill a [bitch]." And on another occasion, he said he would "chop a bitch up and have no remorse after."

MB also testified that defendant and Onysko arranged her prostitution sessions through a website, Backpage.com. MB went to five to ten sessions per day at one of two hotels. Mack told MB what to wear and would wait outside during each session. Afterwards, she would hand

all the money to defendant because her "drug debt was really high and [she] had to pay it back[;]" in essence, MB "could never catch up with [her] debt because [she] was using so much that it just was a never-ending cycle."

The second victim to testify was "MS." She testified that she was not addicted to any drug until she met Mack. After she met him, she began using cocaine, which quickly became a daily habit. MS testified that she met Mack at a party and spent the night at his house. The next morning, defendant told MS that he had received a text message indicating that she was only sixteen or seventeen years old. When MS began to respond, defendant "put his hand up . . . to stop [MS] from talking." That same morning, Onysko told MS that the women in the house were prostituting themselves for Mack and asked if she "was going to do Backpage[.]" MS said no, and Onysko replied, "you don't think you will, but you will."

After the first night, MS returned to Mack's house numerous times. During those visits, defendant consistently provided MS with cocaine free of charge, even refusing her offers to pay. For the first few weeks, defendant was "really sweet" towards MS and "treated [her] special, like he cared about [her]." Eventually, Mack stopped supplying MS with as much cocaine as he had previously done. MS testified that "for a couple of days" defendant would supply her with "twice as much" as she would ordinarily get, and then, "in a couple of days he would bump it down and barely give [her] any." This erratic intake caused withdrawal symptoms, including depression and migraines. MS believed that Mack controlled her drug supply in this way on purpose, because she had witnessed him doing the same thing to the other girls in the house. For example, she saw him treat MB the same way, ignoring her requests for heroin, which caused MB to get sick as a result. MS testified that "[MB] would scream and cry, and she was laying on the floor. Like she couldn't control her legs. She was kicking her legs. And she was just crying

and sobbing and sweating and throwing up . . . ." MS also testified that during her first experience with prostitution she was "terrified" to go to the motel, but did so anyway because "when you're around someone that . . . terrifies you, saying no isn't an option." MS testified that she was scared of defendant because "[h]e would say things that would lead one to believe that one would end up with a bullet in the head," like "I'm not afraid to chop a bitch up and throw her in the river."

The third and final victim to testify was "SW." Like MB, she was a heroin addict before she met defendant. SW first met Mack when she went to his house to buy drugs. Defendant soon began fronting her drugs, "keeping track of how much [SW] owed him." Shortly thereafter, defendant suggested that one way she could repay her debt was by performing oral sex with one of his drug customers, which she did. Eventually, she began prostituting herself through ads on Backpage.com. SW did not want to prostitute herself, but did so because she needed the drugs. After she finished her prostitution sessions, SW would give the money she earned directly to Mack, who would subtract the amount from her drug debt. Depending on what kind of mood he was in, Mack sometimes fronted her drugs; other times, he would refuse to give her heroin until she went to a prostitution session. SW testified that when she was deprived of her heroin, she would get sick.

After hearing this and other evidence, the jury convicted defendant of, among other offenses, one count of conspiracy to commit drug or sex trafficking and four counts of sex trafficking, one for each of the victims: MB, MS, SW, and CB.[1] The district court sentenced

---

[1]Defendant was also convicted of two counts of distribution of a controlled substance, 18 U.S.C. § 841(a)(1), and two counts of witness tampering, 18 U.S.C. § 1512. The district court sentenced him to twenty years in prison for each count. Mack does not challenge these convictions.

him to life in prison for each sex trafficking conviction and five years in prison for the conspiracy conviction. Defendant now appeals, raising five claims of error.[2]

## II.

Defendant first challenges the sufficiency of the evidence as it relates to count one (conspiracy) and counts two through five (sex trafficking).[3]

This court reviews de novo a claim of insufficient evidence, assessing the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "[This court] will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* Further, this court must make all reasonable inferences and resolve all issues of credibility in favor of the jury's verdict. *Id*. Circumstantial evidence "is entitled to the same weight as direct evidence[,]" *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993) (citation omitted), and "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable

---

[2]Defendant raises a sixth claim of error relating to the jury instructions. However, his arguments are vague and conclusory. He does not identify the problematic language in the jury instructions or provide citation to relevant legal authority. Therefore, we consider this argument abandoned. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (alteration omitted).

[3]Defendant's argument is actually a combination of two claims: a sufficiency-of-the-evidence claim and a claim that the district court erred in denying his motion for acquittal under Fed. R. Crim. P. 29. Because the standard of review for each claim is identical, *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994), we will address defendant's first two claims together.

hypothesis except that of guilt[.]" *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (citation omitted).

To sustain a conspiracy to commit an offense against the United States conviction under 18 U.S.C. § 371, "the government must prove beyond a reasonable doubt that there was 'an agreement between two or more persons to act together in committing an offense, and an overt act in furtherance of the conspiracy.'" *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) (quoting *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000)).

To sustain a conviction for sex trafficking under 18 U.S.C. § 1591(a)(1), the government must prove beyond a reasonable doubt that the defendant knowingly "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], [or] maintain[ed] . . . by any means a person . . . knowing, . . . or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act[.]" The statute defines "coercion" in relevant part as "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." 18 U.S.C. § 1591(e)(2)(B). In turn, the statute defines "serious harm" as

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

18 U.S.C. § 1591(e)(4).

Defendant argues that the government failed to present sufficient evidence that he used "force" or "coercion" to cause the victims to engage in commercial sex acts.[4] Citing portions of the victims' testimony indicating that they had a pre-existing drug addiction and that they entered into the prostitution arrangement voluntarily and knowingly, defendant claims that the witnesses' testimony relating to the "climate of fear" surrounding his criminal enterprise was contradictory. He observes that the victims were always free to leave his house, often with defendant giving them a ride home, and they came back voluntarily. According to defendant, prostitution "was a convenient way to pay for the drugs they wanted. . . . There was no coercion."

At the outset, we note that defendant's argument on appeal, which focuses solely on the evidence of force or coercion, does not attack his convictions on count one (conspiracy) and count three (sex trafficking of a minor). Regarding count one, defendant does not claim that the government failed to meet its burden of proving a conspiracy to commit a drug trafficking offense, one of the two alternative theories of guilt alleged by the government and found by the jury. Even if he had, the evidence showed that defendant acted in concert with his coconspirator, Onysko, to cause his victims to prostitute themselves. Onysko—often at defendant's direction— would take photographs of the women and post the prostitution ads on Backpage.com. Defendant instructed the victims what to wear and how much to charge for each session. Onysko and defendant would drive the women to and from the hotels where the acts of prostitution would occur. Our review of the trial record convinces us that there was more than sufficient evidence for a reasonable jury to conclude that defendant and Onysko willfully agreed

---

[4]Mack does not challenge the evidence as it relates to the interstate nexus, trafficking acts, or commercial sex act elements of the offense.

to engage in a sex trafficking operation and took an overt act in furtherance of that conspiracy. *See Beverly*, 369 F.3d at 532.

With respect to his sex trafficking of a minor (MS) conviction, the government was not required to prove force or coercion at all. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims."). Instead, the government need only prove that defendant knew, or acted in reckless disregard of the fact, that MS was less than eighteen years old and would be caused to engage in commercial sex acts. 18 U.S.C. § 1591(a); *see also United States v. Pringler*, 765 F.3d 445, 449 (5th Cir. 2014); *United States v. Jackson*, No. 14–3548, 2015 WL 4665101, at *2 (6th Cir. Aug. 6, 2015). At trial, the government presented evidence that defendant received a text message indicating that MS was sixteen or seventeen years old. MB also testified that she and CB suspected MS was in high school and that they shared that concern with defendant. This evidence, viewed in the light most favorable to the government, is sufficient to enable a reasonable jury to find that defendant knew, or acted in reckless disregard of the fact, that MS was less than eighteen years old at the time he caused her to engage in prostitution. Accordingly, we affirm defendant's convictions on counts one and three.

Regarding the remaining sex trafficking counts, defendant essentially invites us to reweigh the evidence, re-evaluate witness credibility, and generally substitute our judgment for that of the jury. This we cannot do. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citation omitted). Mack's selective reading of the trial record ignores the remaining, and abundant, testimony depicting the coercive and, at times, physically abusive atmosphere in which the victims felt compelled to prostitute themselves.

The evidence adduced at trial showed that defendant coerced the victims into prostituting themselves by initially supplying them with drugs under the pretense that they were free. When he suddenly cut them off and demanded payment, he exploited their addiction, which his previous supply of free drugs had cultivated. For instance, SW testified that defendant would withhold heroin until she went to prostitution sessions, thus using her addiction as an incentive to prostitute herself. Similarly, MB testified that she would get heroin from defendant only after she completed her "appointments" with "Johns." The government also admitted text messages between defendant and CB showing that she pleaded for drugs before going to prostitution sessions on numerous occasions. One exchange is particularly illustrative:

> **CB:** I'm rly tryin for one until then. Because I'm guna have a rly hard time doing this 2 hrs [session] with nothingg.
>
> * * *
>
> **CB:** I've been tryin to be on point..and be as appealing as I can.
>
> **CB:** He's about 15 mins away.
>
> **CB:** Can I pleeease do shot before he gets here?? He's getting off freeway. Please jay?
>
> **Defendant:** Show this text to [Toby]. give her one of those real quick.
>
> **CB:** I fuckin love you.

The evidence also showed that the victims engaged in commercial sex acts in order to avoid the physical and psychological harm of heroin and cocaine withdrawal. MS testified that when she did not prostitute herself, she would get sick from lack of heroin. Without it, she would sweat, vomit, shake, and kick her legs uncontrollably. MB's symptoms were so severe that MS testified she had "never seen anything like it[.]" SW described drug sickness as including hot and cold sweats, inability to sleep, restless leg syndrome, shakes, and diarrhea.

The victims would suffer these physical symptoms unless they prostituted themselves for defendant's benefit.

The fact that several of the victims had pre-existing drug addictions does not make Mack's actions any less coercive. Mack used those addictions to his advantage by supplying "free" drugs to the victims, which not only resulted in a high (and fictitious) drug debt, but also exacerbated their addictions. At that point, defendant carefully controlled MB, SW, and CB's access to drugs to cause them to engage in acts of prostitution, which they did to avoid the painful withdrawal symptoms induced by defendant's intermittent and unpredictable supply of free drugs. This evidence was sufficient to enable a reasonable jury to find that defendant's supplying and withholding of drugs from SW, MB, and CB was part of a "plan[] or pattern intended to cause [them] to believe that failure to perform [prostitution acts] would result in serious harm . . . ." 18 U.S.C. § 1591(e)(2)(B); *see also United States v. Fields*, No. 8:13-cr-198-T-30TGW, 2013 WL 5278499, at *1 (M.D. Fla. Sept. 18, 2013) (ruling that "fear of severe withdrawal symptoms meets the definition of 'serious harm' as defined by the Statute").[5]

There was also sufficient evidence to allow a reasonable jury to find that defendant used force or the threat of force to cause his victims to engage in prostitution. MB testified that she saw defendant choke CB and hold her up in the air while yelling at her. Both SW and MB also testified that they saw CB crying on multiple occasions in response to defendant's aggressive behavior. And text messages between CB and defendant introduced at trial showed CB

---

[5]Notably, defendant does not argue that the withdrawal symptoms the victims suffered do not constitute "serious harm," *i.e.*, that they would not "compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(4). Given the testimony adduced at trial, we are persuaded that a reasonable jury could conclude that the withdrawal symptoms the victims suffered constituted "serious harm" for purposes of § 1591.

repeatedly apologizing to defendant and pleading with him not to be mad with her. This provided additional circumstantial evidence to corroborate MB's and SW's testimony that CB was fearful of Mack. MB also testified that defendant struck her and told her he was not afraid to "chop a bitch up and have no remorse after." SW similarly testified that she saw defendant almost punch another prostitute, and scream "Bitch, you don't know what mean is[.]" When SW tried to intervene, defendant said "Do you want some, too?" Taken together, this evidence was sufficient for a reasonable jury to conclude that defendant used "force [or] threats of force" to cause CB, SW, and MB to engage in commercial sex acts. 18 U.S.C. § 1591(a); *see also United States v. McMillian*, 777 F.3d 444, 447 (7th Cir. 2015) (finding sufficient evidence under § 1591 where the defendant "used violence on occasion, particularly against the oldest [prostitute], Jessica, for various infractions such as disobeying him or talking too loudly"); *United States v. McIntyre*, No. 14–3691, 2015 WL 4269932, at *2 (3rd Cir. July 15, 2015) (upholding sex trafficking conviction based, in part, on victims' testimony that they were beaten or were present when other victims were beaten).

For these reasons, we affirm defendant's convictions for conspiracy and sex trafficking.

## III.

Defendant next argues that the district court erred in denying his pre-trial motion to suppress evidence obtained during a warrantless search of the motel room where the victims would hold their prostitution "sessions." This court reviews a district court's decision on a motion to suppress using a mixed standard of review, reviewing the district court's factual determinations for clear error, but its legal conclusions de novo. *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir. 2003) (citations omitted). "Where, as here, the district court has

denied a motion to suppress, [this court] review[s] the evidence in a light most favorable to the Government." *Id*. at 622–23.

When police arrested Mack, they also arrested his coconspirator, Onysko. In the course of arresting Onysko, Sergeant James Welsh of the Elyria Police Department discovered a hotel room key card. He asked whether the room key belonged to her, and she said it did. Sergeant Welsh then asked for her consent to send officers to search the room, which she provided. When two officers arrived at the room, they knocked on the door and the occupant, MB, invited them in. Inside, with the help of MB, they recovered a notebook and laptop containing information regarding the victims' prostitution activities. Defendant argues that the district court erred in failing to suppress this evidence as fruit of an unlawful warrantless search. We disagree.

It is well-established that "[i]f an officer obtains consent to search, a warrantless search does not offend the Constitution." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008) (citation omitted). Defendant acknowledges this well-established rule, but argues that the record fails to show that Onysko actually consented to the search.[6] He relies on the fact that the police report of her arrest does not indicate she gave consent. However, this argument ignores that the district court specifically credited Sergeant Welsh's testimony that Onysko gave voluntary verbal consent to search the room and that he inadvertently omitted this fact in his report. Defendant fails to explain how the district court's finding in this regard was clearly erroneous, and we

---

[6]Defendant does not challenge Onysko's authority to consent to search the hotel room, and with good reason. There can be little dispute that Onysko had common authority over the hotel room—the room was in her name and she had the key when arrested. *See United States v. Caldwell*, 518 F.3d 426, 430 (6th Cir. 2008) (stating that co-occupants of dwellings—including hotel rooms—can consent to searches of that property, so long as that person has "'common authority' over the premises.") (citation omitted).

detect no clear error from our independent review of the record. Therefore, we affirm the district court's decision that the search was lawful.

IV.

Next, defendant asserts that the district court erred in denying his pre-trial motion to admit evidence of some of the victims' prior history of prostitution. We review the district court's decision to admit or exclude evidence for an abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). We will affirm the district court's ruling unless "we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 159 F.3d 208, 217 (6th Cir. 1998) (citation and internal quotation marks omitted).

In "criminal proceeding[s] involving alleged sexual misconduct[,]" Federal Rule of Evidence 412 prohibits the admission of evidence "offered to prove that a victim engaged in other sexual behavior[.]" Fed. R. Evid. 412(a)(1). However, evidence "of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor" is admissible in criminal cases. Fed. R. Evid. 412(b)(1)(B). Mack argues that the district court erred in excluding evidence of the victims' prior history of prostitution under Rule 412(b)(1)(B) because it was relevant to show that the victims "consented" to acts of prostitution while working for him, thereby showing that Mack did not coerce the women into prostituting for him.

Defendant's argument regarding Rule 412 lacks merit. The "consent" exception on which he relies refers to "specific instances of a victim's sexual behavior *with respect to the person accused . . . .*" Fed. R. Evid. 412(b)(1)(B) (emphasis added). The evidence defendant sought to introduce did not relate to him and therefore does not fall within the scope of Rule

412(b)(1)(B).  Moreover, other circuits have rejected this interpretation of Rule 412.  *See, e.g.*, *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (holding that victim's prior acts of prostitution were irrelevant to whether the defendant coerced her into prostitution); *United States v. Valenzuela*, 495 F. App'x 817, 820 (9th Cir. 2012) (holding that "evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes" under Rule 412).  For these reasons, we affirm the district court's decision to exclude evidence of the victims' prior history of prostitution.

V.

Finally, defendant argues that the district court erred in imposing a four-level "organizer or leader" enhancement to his sentencing guidelines under U.S.S.G. § 3B1.1(a).  This court reviews sentences "for reasonableness, which . . . has both substantive and procedural components."  *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007) (citation and quotation marks omitted).  A sentence is procedurally unreasonable if, among other things, the district court "fail[s] to calculate (or improperly calculate[s]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  This court reviews preserved procedural reasonableness challenges for an abuse of discretion.  *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009).  Within this framework, review of the district court's specific factual findings is for clear error.  *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011).  Finally, "review of the legal conclusion that a person is an organizer or leader under Section 3B1.1 is also deferential."  *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

To justify the imposition of a four-level "organizer or leader" enhancement under § 3B1.1, the government must show by a preponderance of the evidence that the defendant "was an organizer or leader of a criminal activity that involved five or more participants[.]" U.S.S.G. § 3B1.1(a). "Participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, cmt. n.1.

Defendant disagrees with the district court's finding that several individuals implicated in his criminal enterprise—Sarah Crabtree, Monica Freedman, Carly Hribar, and Katherine Frioud—were "participants." Noting that none were charged with a crime, defendant argues that throughout the trial, these individuals were described by the government merely as his customers, not participants in the conspiracy. However, this argument ignores the district court's factual findings on this issue. At sentencing, the court specifically found:

> [T]he testimony of these individuals . . . goes beyond just simply purchasing drugs. It goes into actually transporting the victims to [prostitution] appointments or transporting, in some instances, the minor victim to her home or picking her up from her home, and also, I think one of the witnesses was sort of looking out for [defendant], as well, and reporting things back to him that she might have heard others say or heard on the streets to try to keep him – protect him or keep him out of danger as he operated his organization.

Defendant's counsel agreed that this assessment of the evidence was accurate, and defendant does not dispute this finding on appeal. Thus, in light of the evidence supporting the court's finding, we affirm the district court's decision.

VI.

For the foregoing reasons, we affirm defendant's convictions and sentences.