NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0474n.06

No. 16-1840

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 16, 2017
DEBORAH S. HUNT, Clerk

CARON SPENCER,

    Plaintiff-Appellant,

    v.

CRAIG McDONALD and JACK TAEFF,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE: KEITH, BATCHELDER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Caron Spencer alleged in this excessive force case that defendant Craig McDonald choked him during a traffic stop in Inkster, Michigan, and defendant Jack Taeff failed to intervene, but the jury returned a verdict in defendants' favor. At trial, Spencer's attorney wanted to impeach McDonald on cross-examination by eliciting testimony about a sexual assault allegation for which the trooper was investigated several years prior. The district court sustained McDonald's objection, and Spencer challenges this evidentiary ruling on appeal. We affirm.

I.

Spencer argues he is entitled to a new trial because the district court would not allow his lawyer to impeach McDonald on cross-examination by asking about an unrelated sexual assault investigation. The district court precluded that line of questioning in light of its joint final

pretrial order and, in the alternative, pursuant to Federal Rules of Civil Procedure 404(b) and 403. We review the district court's evidentiary ruling for an abuse of discretion, *Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016), and will affirm "unless we are left with a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (internal quotation marks and citation omitted).

A.

For Spencer, the joint final pretrial order is a considerable obstacle to relief. A pretrial order entered pursuant to Federal Rule of Civil Procedure 16 controls the subsequent course of action unless a "manifest injustice" compels its modification. *See* Fed. R. Civ. P. 16(d), (e). "One of the original purposes of Rule 16 was to promote familiarity with the issues actually involved in the lawsuit 'so that parties c[ould] accurately appraise their cases and substantially reduce the danger of surprise at trial.'" *Clarksville-Montgomery Cty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 998 (6th Cir. 1991) (quoting 6A Fed. Prac. & Proc. Civ. § 1522, at 218 (2d ed. 1990)).

Here, the pretrial order incorporates the parties' agreement to exclude certain evidence about Spencer's background and regarding "[d]efendants' prior discipline unless it involves use of force issues." Spencer maintains that because committing common-law rape can involve the use of physical force, the order does not bar testimony regarding the sexual assault investigation. But he did not seek clarification on this point prior to trial, and defense counsel repeatedly asserted to the district court that the parties agreed "[n]o unrelated discipline gets in. Plaintiff does not point to a place in the record indicating the parties agreed otherwise. Nor does he explain how the sexual assault investigation, which did not result in criminal charges or discipline for excessive force, but rather an internal censure for poor deportment, is relevant to

what occurred during the Inkster traffic stop. *See* Fed. R. Evid. 401(a) (relevant evidence "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence"); *see also* Fed. R. Evid. 402 (irrelevant evidence is not admissible).

Like defense counsel, the district court understood the issue of McDonald's prior discipline to be "limited to excessive force situations" and sustained defense counsel's objections to questions that addressed circumstances beyond that scope. Plaintiff does not explain why, given the context of this case, the district court's interpretation of its own pretrial order is unreasonable. *Cf. Ghandi v. Police Dept. of the City of Detroit*, 823 F.2d 959, 962 (6th Cir. 1987) ("[A]n attempt to pursue any issue not listed in the [final pretrial] order may be rejected by the trial court." (citations omitted)). We thus find no abuse of discretion in the district court's enforcement of its pretrial order.

B.

Plaintiff's primary argument is that Trooper McDonald offered evidence of his good character and therefore plaintiff could rebut that evidence by cross-examining him about the sexual assault investigation. The Advisory Committee on Rules of Evidence defines "character" as follows: "Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness." Fed. R. Evid. 406 Advisory Committee's Note to 1972 Proposed Rules (quoting *McCormick on Evid.*, § 162, at 340 (1954)). Generally, character evidence is disfavored. *See Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)). However, "when a party opens up a subject, there can be no objection if the opposing party introduces evidence on the same subject." *Francis v. Clark Equip. Co.*, 993 F.2d 545, 550 (6th Cir. 1993).

Plaintiff argues several biographical facts about McDonald were elicited from the trooper on direct examination as evidence of his general good character. Specifically, he points to testimony that McDonald attended West Point Academy and had to seek a nomination from a prominent political figure as part of the application process, and to McDonald's describing himself as a detective trooper specialist who attended a Catholic high school and later volunteered to be an Army ranger. Finally, Spencer claims the trooper "continued his character building and self-exaltation" by explaining that he became a policeman at the request of his now former wife and currently investigates shootings in the Tenth Precinct and works with the FBI's gang task force in Detroit.

We find that the district court's characterization of this portion of McDonald's direct testimony as merely biographical was not a clear error of judgment. The unpublished case upon which plaintiff most heavily relies, *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500 (6th Cir. 2012), serves to refute his argument. In that excessive force case, this court held the district court did not abuse its discretion in allowing the plaintiff to be cross-examined regarding his previous arrests because the plaintiff had "opened the door" to such questioning by first establishing his good character. *Id.* at 509–10.

The *Helfrich* plaintiff "opened the door," this court explained, by offering the following testimony and argument:

> Helfrich's attorney extolled Helfrich's character during opening argument, remarking that Helfrich "was the star of the family." During his direct testimony, Helfrich continued to sound the theme of his exemplary character, adding that his image had been tarnished by the unjustified arrest. "I'm . . . a very strong individual, you know, and looked up to." Being "arrested in front of my entire family" was "completely humiliat[ing]" and "very embarrassing, especially when I wasn't doing anything wrong." In particular, "[w]hat was very most challenging is . . . having to explain what an arrest means to my niece and nephew and, you know, see Uncle Steve going to jail. You know, that's a tough thing to explain to

kids." The point of Helfrich's suit in his own mind was "to clear my name with my family. There were 70 people at the wedding; all my . . . family . . . I'm here to kind of reverse the injustice that I witnessed, you know, on how [the police] explained the story."

*Id.* at 509. The opening argument and direct testimony "strongly implied that [plaintiff's] arrest was so embarrassing and humiliating precisely because being arrested is inconsistent with the view his family had of him as their star and role model. The statements implied that [he] was not the sort to fight with police or get arrested." *Id.* Moreover, the district court had warned plaintiff and his lawyer that they risked opening the door to rebuttal evidence "by implying that [plaintiff] 'always had an exemplary record.'" *Id.* at 509–10.

Plaintiff does not point to any such argument, testimony, or warning here, nor does he articulate how the testimony McDonald gave on direct would "open the door" to questioning about the sexual assault investigation specifically. As the district court explained, merely having military training from West Point, or being sufficiently qualified to obtain FBI security clearance, is not akin to character evidence. And McDonald did not argue, testify, or even imply that his disciplinary record was perfect, that he had never hurt or used force against others, that his fellow officers looked up to him as an exemplary policeman, or that he was an ideal (or even adequate) husband and father. Indeed, McDonald admitted he did not graduate from West Point and implied he was no longer married to his "wife at the time." Instead, it was plaintiff's counsel who argued character to the jury in his opening statement by referring to McDonald as "[n]ot a good guy," despite having attended West Point, and by asking McDonald on cross-examination whether he was of "utmost character[.]"

In sum, Spencer does not establish how these biographical facts as presented speak to McDonald's general nature as a person or to his "disposition in respect to a general trait, such as

honesty, temperance, or peacefulness," so as to open the door to questioning about the sexual assault investigation. *See* Fed. R. Evid. 406 advisory committee's note. We conclude that the district court did not abuse its discretion in excluding questioning regarding the investigation as improper impeachment evidence in light of the nature of the trooper's direct testimony.

## C.

In the alternative, the district court ruled that testimony regarding the investigation was inadmissible pursuant to Federal Rule of Evidence 404(b) and unduly prejudicial under Federal Rule of Evidence 403. Spencer challenges these findings in his reply brief only. To the extent he has not forfeited these arguments, he points to no reversible error. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

First, Rule 404(b) bars the admission of propensity evidence, or "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Plaintiff does not argue that testimony about the investigation was admissible for one of the proper purposes outlined in the rule, such as motive, opportunity, intent, plan, preparation, knowledge, identity, or absence of mistake or accident. *See* Fed. R. Evid. 404(b)(2); *see also Jones v. Sandusky Cty., Ohio*, 652 F. App'x 348, 355–56 (6th Cir. 2016). Instead, he asserts McDonald "impl[ied] that he would never be the type of person to be involved in any allegation of excessive or unreasonable force." But to the extent plaintiff sought to elicit testimony regarding the sexual assault investigation to show McDonald *was* the type of person to be involved in an incident in which excessive force was used, the district court appropriately excluded that

testimony pursuant to Rule 404(b). *See United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011) (evidence is admissible under 404(b) if it is probative of a proper purpose in issue that is something other than proving conduct in conformity with character).

Second, Rule 403 provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403. This court examines "the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984). But we grant a district court "very broad discretion" under this rule. *United States v. Fisher*, 648 F.3d 442, 449 (6th Cir. 2011) (citation and internal quotation marks omitted).

Even if the investigation were relevant, the district court did not abuse its "very broad discretion" in excluding evidence of it here. Although "[e]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403[,]" *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996), "inflammatory detail" that has little probative value can be unfairly prejudicial. *See United States v. Sims*, 708 F.3d 832, 836 (6th Cir. 2013).

While plaintiff asserts that the investigation has "probative force," he does not articulate what it might be probative of in the context of this case. And even viewing the evidence in the light most favorable to plaintiff, the district court did not commit a clear error of judgment in ruling that the danger of unfair prejudice was too great. Here, after McDonald admitted on cross-examination that he had been accused of sexual assault, plaintiff's counsel immediately stressed the unsubstantiated, unrelated allegation by asking McDonald if he "[r]aped her, right?" That the trooper was accused of rape is an "inflammatory detail" unrelated to the issues in this

case, which specifically involved whether McDonald used excessive force to subdue Spencer during a traffic stop. The district court committed no abuse of discretion in limiting cross-examination as it did.

Plaintiff also argues McDonald's deposition testimony was admissible for impeachment purposes under Federal Rule of Evidence 613(b) as a prior inconsistent statement. Rule 613(b) provides for impeachment with "[e]xtrinsic evidence of a witness's prior inconsistent statement" if "the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." But it is not apparent with what deposition statement plaintiff would have impeached McDonald, or how the trooper's deposition testimony contradicted his trial testimony. McDonald admitted at his deposition to having been the subject of several internal investigations. Yet, he also stated he was "not aware" of any citizen complaints ever filed against him "regarding force or demeanor." McDonald was not asked about the sexual assault investigation specifically, which was prompted by a citizen complaint, and he did not volunteer the information. He did so at trial, however.

This court has permitted the impeachment of a witness even when the impeaching material involves other acts of the defendant.[1] *See, e.g.*, *United States v. Gholston*, 10 F.3d 384, 388 (6th Cir. 1993) (after denying he made such a statement, witness impeached by his prior statement that he sold drugs for, or received drugs from, the defendant). Even assuming plaintiff satisfied the requirements of Rule 613, however, the evidence is still subject to the balancing test

---

[1]Generally, except for certain criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Rule 608(b) provides that the district court may allow inquiry into specific instances of conduct only "if they are probative of [the witness's] character for truthfulness or untruthfulness." *Id.* Plaintiff does not explain how McDonald's discipline for conduct unbecoming a police officer reflects his character for truthfulness. *See Jones*, 652 F. App'x at 355–56 (not an abuse of discretion to find that discipline for conduct unbecoming as a result of a stalking complaint only marginally reflected the officer's character for truthfulness).

of Rule 403. *See United States v. Foster*, 376 F.3d 577, 591–92 (6th Cir. 2004); *cf. 3 Fed. Evid.* § 6:101 (4th ed. 2013) ("Of course a trial court may exclude extrinsic evidence of a prior inconsistent statement under Rule 403 even if the proponent has satisfied the requirements of Rule 613(b)."). And, as explained above, the district court did not abuse its discretion in excluding testimony about the investigation under that rule.

Finally, even though plaintiff's counsel could not elicit testimony about the sexual assault investigation, he made the point several times on cross-examination that McDonald's trial testimony was inconsistent with his deposition testimony and police report of the incident. To that end, he repeatedly asked McDonald whether he was lying in court or had lied in his deposition or report. Spencer was thus provided a full opportunity to undermine McDonald's credibility as a witness with respect to the incident at issue, and the district court did not abuse its discretion by precluding plaintiff's counsel from, as the trial judge put it, "mak[ing] Officer MacDonald [sic] look like a rapist[.]"

II.

For these reasons, we find no abuse of discretion and affirm.