*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0207p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        *v.*

KAREN CUNAGIN SYPHER,
        *Defendant-Appellant.*

Nos. 11-5233/5411

Appeals from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:09-cr-85-1—Charles R. Simpson III, District Judge.

Argued: May 31, 2012

Decided and Filed: July 5, 2012

Before: MARTIN and DAUGHTREY, Circuit Judges; MALONEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David Nolan, Alexandria, Virginia, for Appellant. Candace G. Hill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** David Nolan, Alexandria, Virginia, for Appellant. Candace G. Hill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Karen Cunagin Sypher appeals her jury conviction. The relatively uncomplicated issues in this case have been overshadowed by the publicity generated by the lawyering. Sypher was charged with six counts of criminal conduct arising from her efforts to extort the University of

_____

[*]The Honorable Paul Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

Louisville's head basketball coach, Rick Pitino.  After a nine-day jury trial, Sypher was convicted of each of the charged counts.  Sypher made several post-trial motions, including one for a new trial based on new evidence and ineffective assistance of counsel.  The district court denied all of her post-trial motions.  Sypher appeals her conviction and the denial of her post-trial motions.  We have considered Sypher's appeal of her conviction, as well as the allegations and arguments that she makes in support of a new trial.  Having carefully reviewed the record, as well as Sypher's arguments, we **AFFIRM** the judgment of the district court.

I.

On the evening of July 21, 2003, Sypher and Pitino, who were unknown to each other at the time, were present at the same restaurant in Louisville, Kentucky.  The exact circumstances of the initial meeting between Sypher and Pitino are disputed, but eventually the two spent time drinking and speaking together that night.  Sypher alleges that Pitino raped her at the restaurant that night; Pitino testified that they had a consensual sexual encounter.  Sypher soon learned that she was pregnant and contacted Pitino.  Sypher alleges that Pitino raped her a second time during a second meeting between the two that they had set up to discuss her pregnancy.  Eventually, Pitino, with the help of his employee, Tim Sypher,[1] arranged for Sypher to have an abortion.

At trial, Lester Goetzinger, an old friend of Sypher's, testified that in February 2009, Sypher told him that Pitino had raped her twice; that Pitino had impregnated her; and that she had an abortion.  According to Goetzinger, Sypher gave him Pitino's cell phone number and asked Goetzinger to call Pitino to make requests of him on Sypher's behalf; Sypher asked that Goetzinger make the calls from a payphone so that they could not be traced.  According to Goetzinger, Sypher wanted, among other things, a house and between $200,000 and $400,000 from Pitino.  Goetzinger testified that he subsequently made three calls to Pitino's cell phone—two calls on February 26, and one on February 28.  Goetzinger left anonymous voice messages each time.  In the first

---

[1]Karen Sypher married Tim Sypher in 2004.  To avoid confusion, we identify Tim Sypher by his first name.

message, Goetzinger mentioned that he had "info" that Pitino had paid for "a young lady that [Pitino] presumably raped" to have an abortion. The second message mentioned the alleged second rape and stated, "So, naw, I'm not out to get money. I don't want no part of that, but . . . I just want you to do the right thing for that woman." The third message mentioned the media: "Within two weeks, the media will be notified of all the details and evidence of the rape." Eventually, Sypher admitted her involvement in the calls to FBI agents, identified the anonymous caller as Lester Goetz (Sypher apparently provided the wrong name for Goetzinger initially), and directed the FBI to Goetzinger's home.

On April 24, the United States filed a criminal complaint against Sypher. The charges against Sypher are based on the phone calls described here, as well as other attempts by Sypher to extort Pitino, and false statements Sypher made to the FBI. On November 18, the grand jury returned the Superceding Indictment against Sypher, charging her with one count of willfully causing another to transmit threatening communications in interstate commerce with intent to extort in violation of 18 U.S.C. § 875(d); one count of making threatening communications in interstate commerce with intent to extort in violation of section 875(d); one count of mailing threatening communications with intent to extort in violation of 18 U.S.C. § 876(d); two counts of making false statements to the FBI in violation of 18 U.S.C. § 1001; and one count of retaliating against an individual for providing truthful information about the commission of a crime to law enforcement in violation of 18 U.S.C. § 1513(e). On August 5, 2010, after a nine-day jury trial, Sypher was convicted of all six counts.

After trial, Sypher's trial counsel requested an extension of time beyond the fourteen days allowed for a defendant to move for a new trial under Federal Rule of Criminal Procedure 33(b)(2). The district count granted the motion and required that any new trial motion, besides one based on newly discovered evidence, be filed within forty-five days of the verdict, i.e., by September 19. On October 20, Sypher's new counsel—not her trial counsel, or either of the individuals who represented her before trial—entered his appearance as Sypher's retained attorney. On that day, he moved to remove the trial judge pursuant to 28 U.S.C. § 144, and to disqualify the trial judge

pursuant to 28 U.S.C. § 455.  Sypher's new counsel subsequently filed several other motions.

On January 5, 2011, Sypher moved for a new trial based on newly discovered evidence and ineffective assistance of counsel.  The district court denied the motion as untimely, finding that Sypher had failed to identify any newly discovered evidence and had failed to show excusable neglect that would justify untimely filing.  On appeal, Sypher contends that she was entitled to a new trial because her trial counsel rendered ineffective assistance.  She also argues that the district court erred by (1) denying her pretrial motions to change venue; (2) creating a web page for free, public access to the trial materials; (3) releasing completed juror questionnaires to the public before seating a jury; (4) denying her post-trial motion for access to documentary and other evidence; and (5) denying her motion for the district court judge to recuse himself.  Sypher also argues that she should be granted a new trial because of cumulative error.

II.

Having carefully considered the record, as well as Sypher's arguments, we conclude that she has advanced no arguments of merit on appeal.  As an initial matter, we decline to address Sypher's claim that her trial counsel was ineffective.  "Except in rare circumstances," this Court does not review ineffective assistance of counsel claims on direct appeal because "claims of ineffective assistance must be addressed in the first instance by a district court pursuant to a claim under 28 U.S.C. § 2255."  *United States v. Gunter*, 620 F.3d 642, 643 n.1 (6th Cir. 2010).  Sypher has not pursued her ineffective assistance of counsel claim in the district court under Section 2255, and the record is not sufficiently developed—there has been no evidentiary hearing and no testimony by Sypher, by her former counsel, or by any other witnesses—to address Sypher's ineffective assistance of counsel claim on direct appeal.  *See United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010) ("[A] defendant cannot typically raise claims of ineffective assistance of counsel on direct appeal because the record is not developed for the purpose of litigating an ineffective assistance claim and is often incomplete.").  Therefore, this Court declines to consider whether counsel was ineffective.  "[Sypher]

may of course, if [she] chooses, pursue this claim through the more traditional method of a collateral proceeding." *Id.* (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003); 28 U.S.C. § 2255 (2006)).

Sypher's other arguments of reversible error by the district court also fail. Sypher has not established that the district court should have granted her a new trial based on newly discovered evidence. This Court reviews for abuse of discretion a district court's judgment on a Rule 33 motion for a new trial. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). To prevail on a motion for a new trial based on newly discovered evidence, "a defendant must show that the new evidence (1) was discovered after the trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal." *United States v. Hanna*, 661 F.3d 271, 297 (6th Cir. 2011). The district court correctly articulated and applied this standard to Sypher's claim, and a careful review of Sypher's briefs on appeal reveals that she has failed to identify any newly discovered evidence. We conclude that the district court did not abuse its discretion in denying Sypher a new trial.

Sypher has also failed to demonstrate that the district court should have granted her motions for a change of venue. Sypher argues that the pretrial publicity in the case made it impossible for her to receive a fair trial. Sypher made two motions to change venue, once before the empanelling of the jury and once after the empanelling of the jury, at the same time as she moved to strike the jury. When the defendant moves for a venue change, "the trial court must transfer the case if 'the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.'" *United States v. Jamieson*, 427 F.3d 394, 412 (6th Cir. 2005) (quoting Fed. R. Crim. P. 21(a)). The denial of a motion for a change of venue is reviewed for abuse of discretion. *Id.* The media attention surrounding this case was substantial because of the celebrity of Pitino and the local passions surrounding college basketball. Moreover, Sypher herself approached the media to share her account on at least two occasions. While "pretrial publicity [can be]

so great that prejudice is presumed," pretrial publicity on its own does not create a presumption that the defendant was denied a fair trial. *Id.* ("To satisfy due process concerns . . . it is not necessary for the jury to be totally ignorant of the case or to be wholly free from any exposure to pretrial publicity."). In the absence of presumptive prejudice, voir dire is the "primary tool for discerning actual prejudice." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Sypher has not demonstrated that the publicity surrounding her trial should create a presumption of prejudice and she has not alleged any aspects of voir dire that reveal she was denied an impartial trial based on venue. The district court did not abuse its discretion when it denied her motions for a change of venue.

Sypher has also failed to demonstrate that the district court erred by creating a website allowing public access to the district court's docket. "[B]y agreement of counsel," the district court designated the deputy clerk as "media liaison" and created a "dedicated website" for media information because of "extensive public interest in this matter." The website allowed access only to publicly filed documents, not those documents filed under seal, and it allowed the public documents to be accessed free of charge. Because the public is typically able to review publicly-filed court records, attend voir dire, and observe the trial, the district court did not reversibly err in allowing free, public access to the docket during Sypher's trial.

Sypher's argument that the district court erred by releasing the completed juror questionnaires to the public two weeks before trial is also meritless. Sypher did not object to this before the district court, and so we review the decision to release the questionnaires for plain error. *United States v. Olano*, 507 U.S. 725, 732-35 (1993). "Plain error" means that an error is clear or obvious. *Id.* at 734. To warrant reversal, the plain error must also have affected an individual's substantial rights, and seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Id.* at 736. Sypher argues that the release of the questionnaires made "[t]he promise of a fair trial . . . non-existent when the public bec[a]me[] aware of [the] juror[s'] personal beliefs and values regarding the trial they [we]re sitting on." This assertion, however, does not

explain how the release of the questionnaires could have had an impact on the trial itself. Though releasing juror questionnaires before trial was an unusual decision, and not the normal situation, Sypher has presented no evidence that the release seriously affected the fairness, integrity, or public reputation of the judicial proceeding, and we cannot say that the district court reversibly erred in releasing them to the public.

Sypher next argues that the district court abused its discretion by denying her access "to original evidence." It appears that she is referring to the court's denial of her post-trial filing of an "Omnibus Motion to Produce Voice Exemplars . . . Original Voice Recordings . . . and Original Photographs . . . for Forensic Testing." In denying these requests, the district court noted that "no legal authority requires or authorizes such post-trial discovery." On appeal, Sypher cites no case law suggesting she was due access to the evidence she sought following her conviction. We conclude that the district court did not abuse its discretion in denying Sypher's post-trial motion.

Sypher has also failed to establish that the district court judge should have recused himself from presiding over her trial. A district judge's denial of a motion to recuse is reviewed for abuse of discretion. *Johnson v. Mitchell*, 585 F.3d 923, 945 (6th Cir. 2009). To justify recusal, the moving party must demonstrate prejudice by the judge, and the judge's prejudice must be personal or extrajudicial. *Jamieson*, 427 F.3d at 405 (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)). Sypher makes no specific allegations about why the district court in this case was not impartial. Instead, Sypher alleges, for example, that the district court "accused [Sypher's counsel] of plagiarizing his staff's own original work regarding an opinion written by [Sypher's counsel's] staff." This is not evidence of bias. *See Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002) (finding that hostility toward defendant's trial counsel is not evidence of bias where it stemmed from events occurring in the course of the proceeding). Sypher has done nothing more than make conclusory allegations to support her claim that the district court was biased against her. *See Lyell v. Renico*, 470 F.3d 1177, 1186 (6th Cir. 2006) ("[A] judge's misconduct at trial may be characterized as bias or prejudice only if it is so extreme as to display clear inability to render fair judgment, so extreme in other

words that it displays a deep-seated favoritism or antagonism that would make fair judgment impossible.") (alteration, citation, and internal quotation marks omitted). The district court did not abuse its discretion in denying her motion to recuse.

Finally, Sypher argues that she should be granted a new trial because of cumulative error. The cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial. *See United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). To warrant a new trial, however, the cumulative effect of the errors must have "deprived [the defendant] of a trial consistent with constitutional guarantees of due process." *Id*.; *see also United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009) (holding that cumulative error exists when "the combined effect of individually harmless errors [is] so prejudicial as to render [a defendant's] trial fundamentally unfair"). Where, as here, no individual ruling has been shown to be erroneous, there is no "error" to consider, and the cumulative error doctrine does not warrant reversal. *Deitz*, 577 F.3d at 697. Sypher has not demonstrated that she is due a new trial because of cumulative error.

III.

Accordingly, we **AFFIRM** the judgment of the district court.