**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0325n.06

**No. 17-5492**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 29, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| DAVID GIVHAN, | |
| Defendant-Appellant. | |

**BEFORE:**   **CLAY, STRANCH, and LARSEN, Circuit Judges.**

**CLAY, Circuit Judge.**  Defendant David Givhan appeals his conviction and sentence for interstate transportation for prostitution, in violation of 18 U.S.C. § 2421; and sex trafficking of an adult by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a), 1591(b)(1), and 1594(a). For the reasons that follow, we **AFFIRM** Defendant's conviction and sentence.

**BACKGROUND**

In May 2016, a federal grand jury returned an indictment charging Defendant with interstate transportation for prostitution of three women (Counts 1, 3, and 4, respectively) and sex trafficking (Count 2).[1]  A jury convicted Defendant on these four counts.  The evidence presented at Defendant's trial supports the following timeline of events.

---

[1] The indictment originally included a second sex trafficking charge, but this charge was dismissed after the alleged victim recanted her story.

Defendant lured three women into working for him as prostitutes, promising them that they could get rich by doing so. Once the women began working for him, Defendant demanded their complete obedience and loyalty, and he used intimidation, threats, and violence to ensure that the women complied. Defendant also branded one of the women, tattooing the word "Premier" on her neck. Defendant set the prices for the women's prostitution services, required them to meet daily quotas, and would sometimes take them across state lines to engage in prostitution, including to Indiana, Kentucky, Texas, and Florida. Despite his promises, Defendant kept all the money that the women earned.

One of the women, whom the parties referred to as Christine at trial, eventually fled from Defendant when he left her alone for a short time. Christine later met up with one of the other women, who had also managed to leave, and the two were later arrested for prostitution in another state. The police noticed the "Premier" tattoo and questioned the two women about Defendant. The police then offered to release the women without charge if they agreed to help the police "get" Defendant. They agreed. The government obtained an indictment based on the women's testimony, and Defendant was arrested.

At trial, Defendant sought to introduce evidence of subsequent acts of prostitution by the two women. Defendant argued that the evidence of the witnesses' subsequent prostitution was relevant to whether he had employed force, fraud, or coercion—a showing that was necessary to the government's case. Defendant later argued that this evidence was also relevant to the jury's consideration of whether the witnesses were biased. The district court denied Defendant's motion to introduce evidence but noted that Defendant could cross-examine the witnesses about their agreement to cooperate with the government in exchange for their release, so long as Defendant did not elicit testimony about prostitution being the specific crime of arrest.

Defendant was convicted, and he subsequently moved for a new trial, arguing, among other things, that he should have been permitted to introduce evidence of the witnesses' subsequent prostitution. The court denied the motion. The court sentenced Defendant to a term of 235 months' imprisonment followed by a lifetime of supervised release on the sex trafficking charge (Count 2) and a concurrent term of 120 months' imprisonment on the interstate transportation for prostitution charges (Counts 1, 3, and 4).

## DISCUSSION

### A.   Evidentiary Rulings

Defendant raises two challenges to the district court's evidentiary rulings. We review evidentiary rulings for abuse of discretion. *United States v. Ramer*, 883 F.3d 659, 669 (6th Cir. 2018) (citing *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007)). However where, as here, the district court is alleged to have erred in its interpretation of the Constitution when issuing an evidentiary ruling, we review the constitutional question *de novo* because a "district court does not have the discretion to rest its evidentiary decisions on incorrect interpretations of the Constitution." *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006).

### Confrontation Clause

Defendant first alleges that the district court violated his rights under the Confrontation Clause when it prohibited him from asking the two government witnesses about the specific crime—prostitution—for which they were arrested.[2]  The Confrontation Clause provides: "In all

---

[2] The district court held that the witnesses' crime of arrest was inadmissible pursuant to Federal Rule of Evidence 412, which prohibits the introduction of "(1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).  The exceptions to this rule are narrow but include "evidence whose exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). The Advisory Committee explained the purpose of this rule as follows:

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, 123 (3d ed. 1940)). Cross-examination allows a criminal defendant to test the believability of a witness and the truth of the witness' testimony in several ways, including by "revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316. Thus, "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (internal quotation marks, alteration, and citation omitted). This Court has explained that "prototypical" forms of bias include the "witness's own inconsistent statements," "the witness's criminal history or status as a parolee or probationer, any immunity or plea deals between the witness and the state, and other 'prejudices, or ulterior

---

The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders.

Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence o[r] for impeachment, except in designated circumstances in which the probative value of the evidence significantly outweighs possible harm to the victim.

Fed. R. Evid. 412 advisory committee's note to 1994 amendment.

motives' from which 'jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Blackston v. Rapelje*, 780 F.3d 340, 349 (6th Cir. 2015) (citations omitted).

The right to cross-examine witnesses is not without limits, however, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. "So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Callahan*, 801 F.3d 606, 624 (6th Cir. 2015) (quoting *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998)).

Evaluating the propriety of a district court's limitation on cross-examination requires this Court to conduct the following analysis:

> If a trial court has curtailed cross-examination from which a jury could have assessed a witness's bias, prejudice or motive to testify, a court must take two additional steps. First, a reviewing court must assess whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive. Second, if this is not the case, and there is indeed a denial or significant diminution of cross-examination that implicates the Confrontation Clause, the Court applies a balancing test, weighing the violation against the competing interests at stake.

*Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir. 2000) (citations omitted).

If we find that the district court admitted evidence in error, then we must ask whether the admission was harmless error or if it instead "requires reversal of a conviction." *United States v. Churn*, 800 F.3d 768, 775 (6th Cir. 2015). Insofar as it pertains to alleged violations of the Confrontation Clause, the harmless error analysis relies on the factors articulated by the Supreme Court in *Van Arsdall*. *See Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) ("[W]e assess the prejudicial impact of constitutional trial errors under the 'substantial and injurious effect'

standard set forth in *Brecht*, examining the error by applying the *Van Arsdall* factors to the facts in the case."). In *Van Arsdall*, the Supreme Court explained that whether an error is harmless in a particular case "depends upon a host of factors," including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

In this case, we find no violation of the Confrontation Clause because the district court did not "curtail[] cross-examination from which a jury could have assessed a witness's bias, prejudice or motive to testify." *Boggs*, 226 F.3d at 739. The district court permitted Defendant to elicit admissions from the witnesses that they had been arrested for serious offenses, that one of them was on probation at the time of her arrest, and that both witnesses had accepted the government's offer to "walk" if they helped officers "get" Defendant. (R. 141 at PageID #1321.) As the district court properly concluded, this information could not be withheld from the jury; these witnesses obtained release from potentially serious charges in exchange for their cooperation in Defendant's prosecution, and the witnesses therefore possessed a "prototypical form of bias." *See Blackston*, 780 F.3d at 349. The Confrontation Clause protected Defendant's right to cross-examine the witnesses about this bias, and the district court permitted him to do so.

Meanwhile, the additional detail that the district court withheld—that the witnesses' crime of arrest was prostitution—was not relevant to the jury's assessment of the witnesses' bias, prejudice, or motive to testify. Defendant argues that the jury may have inferred that the witnesses had a "greater motive or incentive to lie on the stand about [Defendant] to blame him for forcing them into a life of prostitution that led to their arrest" because Defendant gave them "an easy out—

blame [Defendant] for forcing them into a life of prostitution and 'get' him by cooperating with authorities." (Reply at 2.) Put another way, Defendant argues that the witnesses had a "greater incentive to cooperate and implicate [Defendant] because doing so made them look more like victims and less like felons, thereby increasing their chances to avoid charges." (Def. Br. 17.) Defendant therefore asserts that he had a right to "fully develop" a line of inquiry "demonstrat[ing] that the arrest was for prostitution as opposed to some other offense." (Reply at 2.)

Defendant's argument is incorrect; the fact that the witnesses in this case were arrested for prostitution—as opposed to some other serious offense—had no bearing on their credibility. Although the witnesses had an incentive to lie, this motivation arose from the weight of their potential punishment and not from the nature of their suspected crimes. The fact that the witnesses painted themselves as victims may have indeed made their testimony more sympathetic, but their testimony would not have been any less sympathetic if it had been provided in exchange for release from, say, a murder or drug-related arrest. The Confrontation Clause therefore guaranteed Defendant the right to inform the jury that the witnesses had obtained an "easy out" from potentially serious charges, but it did not guarantee Defendant the right to ask about the witnesses' specific crime of arrest. *See Boggs*, 226 F.3d at 740 (rejecting defendant's implausible theory of bias, prejudice, or ulterior motive as an attempt to "wage a general attack on credibility by pointing to individual instances of past conduct").

This Court rejected a similar argument in *United States v. Callahan*, 801 F.3d 606 (6th Cir. 2015). In that case, a co-conspirator agreed to testify against the defendants in connection with a plea agreement. *Id.* at 623–24. The plea agreement allowed the co-conspirator to plead guilty to a conspiracy charge and to thereby escape a substantive charge that carried a penalty of "significantly more time in prison." *Id.* at 624. The district court limited the defendants' cross-

examination, allowing the jury to learn that the co-conspirator was facing a significantly reduced sentence in part due to his cooperation but not allowing the defendant to ask the witness "about the fact that he was originally charged with the substantive count of forced labor." *Id.* The defendant argued that the Confrontation Clause protected his right to ask the co-conspirator about the details of the co-conspirator's charges in order "to get across to the jury that [he] had a strong incentive to lie." *Id.* We found the defendant's argument baseless, explaining that such information was not necessary for the jury "to make a discriminating appraisal of the witness' motives and bias." *Id.* (quoting *United States v. Fields*, 763 F.3d 443, 464–65 (6th Cir. 2014). We further explained such an inquiry "would have obviously and, perhaps, intentionally, elicited irrelevant, prejudicial, and confusing testimony." *Id.* (quoting record below). The same rationale applies in this case.

Even if Defendant's theory of bias had merit, the limit on Defendant's cross-examination would have been justified by the risk of unfair prejudice arising from Defendant's proposed line of questioning. *See Boggs*, 226 F.3d at 739 (articulating two-step Confrontation Clause inquiry). Evidence of the witnesses' subsequent prostitution would have created a risk of unfair prejudice by confusing the jury with an impermissible propensity inference. *See* Fed. R. Evid. 404, 412. Indeed, Defendant essentially admitted as much below; he originally argued that the evidence of the witnesses' subsequent prostitution would be useful to the jury because it would demonstrate the witnesses' propensity to engage in prostitution, which he urged would undermine the witnesses' credibility when they testified that Defendant forced them into a life of prostitution. (R. 54 at PageID #176 ("A jury hearing that the witnesses were still engaging in prostitution, even after [Defendant] is incarcerated, may well conclude that there was no force, fraud or threat involved.").) But other evidence of prostitution is not admissible to prove that prostitution was

consensual on a particular occasion, *see United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015), and the district court correctly denied Defendant's request to introduce other evidence of prostitution on this basis. Defendant now attempts to circumvent the prohibition on propensity evidence via the Confrontation Clause, but the risk of the jury's propensity inference dooms this approach as well. That is, even if this evidence were marginally relevant to a prototypical form of bias, which it is not, *Mack*, 808 F.3d at 1084, the district court correctly exercised its discretion to limit Defendant's cross examination in order to prevent the risk of unfair prejudice. *See Michigan v. Lucas*, 500 U.S. 145, 146 (1991) (explaining that the Sixth Amendment is not necessarily violated by the "preclusion of evidence of a rape victim's prior sexual relationship with a criminal defendant"). We therefore reject Defendant's Confrontation Clause challenge.

**Right to Present a Complete Defense**

Defendant next argues that the district court violated his right to present a complete defense "by permitting the government to introduce evidence of other acts of prostitution that would ordinarily be barred by Rule 412 whenever it suited the government's purposes while prohibiting [Defendant] from introducing similar evidence." (Def. Br. 41.) "Whether rooted directly in the Due Process Clause of the [Fifth Amendment] or in the Compulsory Process or Confrontation Clause[] of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (alterations, citations, and internal quotation marks omitted). Accordingly, evidentiary rules may not operate to arbitrarily exclude important evidence offered by the defense, *i.e.*, excluding such evidence must serve a legitimate interest. *Id.* at 325.

Evidentiary rules may not, for instance, prevent a criminal defendant on trial for murder from calling as a witness "a person who had been charged and previously convicted of committing the same murder." *See id.* (discussing *Washington v. Texas*, 388 U.S. 14 (1967)).

Defendant's argument that the district court violated his right to present a complete defense is unavailing. Defendant's argument relies on the premise that the district court barred him from introducing certain evidence under Rule 412 of the Federal Rules of Evidence while failing to apply that rule to bar similar evidence offered by the government. But even if we were to assume that the district court erred insofar as it should have excluded the government's evidence pursuant to Rule 412, it does not follow that the district court improperly excluded any of Defendant's evidence. Nor does it follow that the district court violated Defendant's right to present a complete defense. Under the constitutional rule that Defendant has invoked, Defendant must show that the district court applied a rule to exclude evidence without a legitimate basis. *See Holmes*, 547 U.S. at 325. The alleged inconsistency of the district court's rulings is irrelevant to this inquiry, and Defendant's argument therefore fails.

Defendant also argues that the district court violated his right to present a complete defense in relation to a government witness who was referred to at trial as Xia. Prior to trial, Xia told the government that she had worked for Defendant since she met him in 2012, and she described several specific instances of violence by which Defendant had allegedly coerced her obedience and continued employment. The government previewed Xia's testimony in its opening statement. Thereafter, Xia recanted much of her testimony, explaining that she had confused Defendant with a prior pimp, that she had actually met Defendant in 2015, and that the violence that the government described in its opening argument had actually been inflicted by the prior pimp rather than by Defendant. Defendant did not move for a mistrial.

Although the government's opening statement was obviously prejudicial to Defendant in light of Xia's later recantation, Defendant cannot argue that the district court arbitrarily excluded any exculpatory evidence such that his right to present a complete defense was inhibited. As Defendant himself admits, the district court permitted Xia to explain how her prior pimp—not Defendant—inflicted each of the injuries that the government described during its opening statement, and Xia told the jury that she had incorrectly blamed Defendant for these actions in preparation for trial. Defendant now argues that "evidence that Xia had a pimp prior to [Defendant] should have been inadmissible for any purpose, even to show the relationship of the parties." (Def. Br. 45.) But this argument is contrary to Defendant's interests; Xia's testimony about her prior pimp was strongly exculpatory under the circumstances, and its arbitrary exclusion under an evidentiary rule would likely have been a violation of Defendant's rights under the Sixth Amendment. *See, e.g.*, *Blackston*, 780 F.3d at 353 ("A witness's own inconsistent statements, including recantations of prior inculpatory testimony, undeniably bear on a witness's bias and credibility[.]"). But the district court did not impose such a limit, and Defendant's argument that Xia's testimony should have been excluded in order to protect his right to present a complete defense has no merit. *See Holmes*, 547 U.S. at 324.

**Cumulative Error**

Finally, Defendant argues that the cumulative effect of the district court's errors requires reversal. "The cumulative effect of errors that are harmless by themselves can be so prejudicial as to warrant a new trial." *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). "In order to obtain a new trial based upon cumulative error, . . . a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). In this case, however, reversal is not

warranted because Defendant has not identified any error committed by the district court. *See Sypher*, 684 F.3d at 628 ("Where, as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." (citing *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009))).

**B.    Defendant's Request for a Reduced Sentence**

During sentencing, Defendant made two arguments that he alleges the district court erroneously failed to address. We review this issue for plain error because Defendant did not object below when the district court asked the *Bostic* question. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Under the plain-error standard, this Court has discretion to remedy an error, but only upon a showing that the error is "clear or obvious, affect[s] a defendant's substantial rights, and seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006); *see United States v. Olano*, 507 U.S. 725, 736 (1993). The defendant has the burden of persuasion. *Olano*, 507 U.S. at 734. "An error is 'plain' when, at a minimum, it 'is clear under current law.'" *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quoting *Olano*, 507 U.S. at 734). As relevant to this case, an error affects a defendant's substantial rights when there is a "reasonable probability that the error affected the outcome of the sentencing proceedings." *United States v. Wilson*, 776 F.3d 402, 405 (6th Cir. 2015) (citing *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

Under plain error review, this Court will not affirm a sentence when "no part of the record makes clear that the district judge even understood Defendant's argument" because "[c]onfidence in a judge's use of reason underlies the public's trust in the judicial institution." *Rita v. United States*, 551 U.S. 338, 356 (2007); *see United States v. Wallace*, 597 F.3d 794, 805–08 (6th Cir. 2010). Although "the sentencing judge need only 'set forth enough to satisfy the appellate court

that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority,'" *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018) (quoting *Rita*, 551 U.S. at 356), the record must ultimately "make[] clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him," *Vonner*, 516 F.3d at 387 (alteration and internal quotation marks omitted) (quoting *Rita*, 551 U.S. at 358). The sentencing court may ignore an argument only if the argument's frivolous nature is obvious to the court and will be obvious on appellate review. *See United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (clarifying that the court need only address nonfrivolous arguments); *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009) (explaining that a district court "is not obligated to review defendant's argument when it lacks any factual basis or legal merit"); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("[A]rguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence.").

Defendant fails to demonstrate that the district court committed plain error with regard to either of the sentencing arguments to which he now refers. Defendant's first argument was that he should receive a reduced sentence because of his race. In support, Defendant submitted to the record an academic article discussing racial disparities in the prosecution of sex trafficking violations. Defendant summarizes the article as showing that "80–90% of defendants prosecuted under 18 U.S.C. § 1951 were black males while black males make up only 6.5% of the population in the United States." (Def. Br. 51.) Defendant further summarizes the article as showing that "life sentences are often given to black men for crimes that often count as misdemeanors or government civil forfeiture suits against white businesses." (*Id.* (citing record).) But this argument was frivolous because race is "not relevant in the determination of a sentence." USSG §5H1.10;

*see Koon v. United States*, 518 U.S. 81, 93 (1996) (explaining that race "never can be [a] bas[i]s for departure"); *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) ("[A]lthough '[r]eference to national origin and naturalized status is permissible' during sentencing, it is allowed only 'so long as it does not become the basis for determining the sentence.'" (quoting *United States v. Kaba*, 480 F.3d 152, 156 (2d Cir. 2007))). Defendant does not argue that the district court improperly *considered* his race when imposing his sentence; he argues instead that the district court improperly *failed* to consider his race during sentencing—something it is not permitted to do. The district court committed no error by ignoring this frivolous argument.

Defendant's second argument was that he should receive a reduced sentence because his offense conduct was not "within the intended targets of the anti-trafficking statute." (Def. Br. 52.) On appeal, Defendant identifies this argument as one that went unaddressed by the district court, but he fails to explain how the district court's failure to address this argument constitutes plain error. Defendant's counsel declined to elaborate during oral argument. (*See* Courtroom Audio 12:06 to 12:40.) Accordingly, we deem the issue waived. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)). Defendant's challenge to his sentence therefore has no merit.

## CONCLUSION

We **AFFIRM** Defendant's conviction and sentence.