NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0219n.06

Case No. 25-3061

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| LASHAWNDA ALEXANDER, | ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SILER, MOORE, and BLOOMEKATZ, Circuit Judges.

**SILER, Circuit Judge.** Defendant Lashawnda Alexander appeals directly from her convictions for wire fraud in violation of 18 U.S.C. § 1343. Specifically, Alexander contends that the district court violated her constitutional right to present a defense and that she is entitled to relief on cumulative error. We **AFFIRM**.

## I. Background

The United States Small Business Administration (SBA) helps American small businesses by providing loans and educational services. In 2020, Congress expanded the SBA's Economic Injury Disaster Loan (EIDL) Program to address the COVID-19 pandemic. Under the expanded EIDL Program, a small business could receive grant money based on the number of people it employed—more employees meant more funds. Similarly, a business could also receive loan money based on a formula tied to gross revenue.

Because of the urgent need to fund businesses during the pandemic, the EIDL Program streamlined the application process for grants and loans. To determine eligibility, the Program relied on credit checks, bank account verifications, and applicant representations.

In 2006, Alexander obtained a cosmetology license and began work as a hairstylist, renting booths at various barbershops. For 2019, Alexander reported gross sales of $33,841. In addition to providing hairstyling services, Alexander owned an LLC, TressD, which sold hair bundles and wigs. For all relevant years, TressD did not file taxes, and there is no evidence that the business had employees.

In 2020, Alexander submitted a loan application to the SBA. In the application, she listed her name as the business and reported $125,000 in gross revenue for the 12 months preceding the pandemic. Additionally, she reported employing 10 individuals.

Minutes after submitting the first application, Alexander submitted a second application using her daughter's name as the business. She claimed that the business had a gross revenue of $120,000 and that it employed ten individuals. The next day, Alexander submitted a third application under her LLC, TressD, and indicated a gross income of $175,000 and employment of 15 individuals.

Subsequently, Alexander received three disbursements from the SBA: a $10,000 grant for the first application, a $10,000 grant for the second, and a $71,000 loan for the third. To receive the loan, Alexander agreed that the loan proceeds were for alleviating COVID-19 related economic injury, certified that no one was paid in connection with her application, and represented that the information she provided was true with warnings that she could face criminal sanction and penalty of perjury. While Alexander used some of the loan proceeds to support her business, most of the funds went toward personal expenditures, including a Mercedez-Benz car.

Later, Alexander was indicted with three counts of wire fraud under 18 U.S.C. § 1343. At trial, during opening statements, Alexander's counsel told the jury that Alexander had received bad information from some individuals and that another person helped her complete the EIDL Program applications.

Alexander also testified in her own defense. Specifically, she stated that she did not know the applications contained false information. And consistent with her opening statement, she blamed the inaccuracies on bad advice from third parties and an unidentified man who completed the applications for her. Regarding the unidentified man, she recalled that he entered the barbershop where she was working, told her she could apply for a loan, and offered to complete the applications in exchange for a fee. She claimed that she was "naïve" and trusted him.

Alexander's counsel asked, "[W]ithout telling us verbatim what [the unidentified man] said . . . what happened?" But Alexander struggled with this directive; she quoted the unidentified man and then suggested that someone who "worked for the SC," meaning that the individual was a government employee, had given her advice about the loan process. The prosecution objected, arguing that Alexander had impermissibly raised a public-authority defense and that her testimony contained hearsay. In response, Alexander's counsel represented that "[Alexander is] trying to describe [what happened] without saying he said this and he said that." But Alexander's counsel then agreed to "redirect her a little bit."

Despite a court instruction to avoid hearsay, Alexander struggled to comply, so the prosecution objected a second time. Again, Alexander's counsel communicated that Alexander was "not trying to say what the person told her or what the conversation was" but was instead "trying to explain why she took the next step she did, how the three applications came to be." The court sustained the objection.

3

Finally, Alexander testified about a conversation where she told the unidentified man that one of her applications "was denied." Upon a third hearsay objection, Alexander's counsel countered that the statement was "not being offered for the truth of the matter asserted but it's being offered to show what happened next and why she took the action that she did." The district court sustained the objection, and her counsel rephrased.

Alexander later testified that she spoke with someone "who knew about the SBA." In closing arguments, Alexander's counsel reiterated that Alexander had made "several mistakes" and had "trusted a stranger."

The jury found Alexander guilty on all three counts. The district court later sentenced Alexander to 24 months of imprisonment.

## II.    Discussion

### A.    Alexander's constitutional claim is forfeited.

On appeal, Alexander argues that she preserved her claim that the district court impeded her constitutional right to present a defense. In response, the Government argues that Alexander's constitutional defense argument is, at a minimum, forfeited.

As relevant, "forfeiture is the failure to make [a] timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993). To avoid forfeiting the challenge, the challenger "must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (citation modified) (quoting *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980). Where an argument is forfeited, we review the challenged decision for plain error. *See United States v. Hadley*, 431 F.3d 484, 498 (6th Cir. 2005).

During Alexander's testimony, she quoted the man she claimed had completed her applications, and she referenced a third person's advice. The prosecution objected, primarily on hearsay grounds. Alexander's counsel presented little rejoinder, offering to "redirect [Alexander] a little bit." Essentially the same objection and response occurred a second time. Then, Alexander recounted a conversation where she told the unidentified man that one of her applications "was denied." After a third hearsay objection, Alexander's counsel argued that the statement was "not being offered for the truth of the matter asserted." The district court sustained the objection.

After the objections and rulings, Alexander's counsel never contended that Alexander's right to present a defense was under siege. Likewise, Alexander's counsel never squarely argued that admitting the conversations was necessary to negate her intent—the requisite mens rea for wire fraud. Under our preservation cases, these failures are enough to find forfeiture and trigger plain-error review. *See Hadley*, 431 F.3d at 498; *Bostic*, 371 F.3d at 871–73.

In response, Alexander contends that she preserved her constitutional claim because she argued that the out-of-court statements were not hearsay. But claim preservation is ultimately about giving notice, *Bostic*, 371 F.3d at 871, and Alexander's counsel offered no trial objection or argument that gave the Government notice of the constitutional claim she raises now. So, the issue was forfeited.

**B.      Alexander was not plainly deprived of her right to present a defense.**

Given that the issue was forfeited, we review for plain error only Alexander's argument that the district court violated her right to present a defense because the excluded statements showed that she did not intend to commit fraud. In response, the Government argues that Alexander presented her case and that admitting the statements would not have changed the outcome.

5

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citation modified). But defendants are guaranteed "a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Accordingly, a district court's "erroneous evidentiary rulings rarely constitute a violation of a defendant's right to present a defense." *United States v. Hardy*, 586 F.3d 1040, 1044 (6th Cir. 2009). The right is violated only where the exclusion of evidence is "arbitrary" or "disproportionate" to the purposes the evidentiary rule is meant to serve. *Holmes*, 547 U.S. at 324–26; *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014). And even then, relief is warranted only when the omitted evidence would have created a reasonable doubt that otherwise did not exist. *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006).

Alexander has not shown that she was deprived of her constitutional right to present a defense. The district court did not impose a blanket prohibition on her defense; it ruled only that she could not rely on hearsay statements that lacked an exception. That is a routine evidentiary limitation, not an arbitrary restriction on the defense. *See Taylor v. Illinois*, 484 U.S. 400, 410–11 (1988).

Nor did the hearsay rulings, even if erroneous, prevent Alexander from presenting her theory. Her opening statement informed the jury that someone helped complete her applications and that she received bad advice from others. Alexander then testified that the unidentified man submitted her applications and that she trusted him. She also testified that she spoke with someone "who knew about the SBA." And her closing argument returned to the same theme—that Alexander made mistakes and trusted a stranger.

Furthermore, Alexander also has not shown that the excluded statements would have created a reasonable doubt that otherwise did not exist. She never identified the speakers, never

established the basis of their knowledge, and never made a developed proffer of the substance of the conversations. On this record, it is unclear whether the statements would have altered the jury's assessment of intent. Consequently, Alexander has not established plain error.

**C.     Alexander is not entitled to relief on cumulative error.**

Finally, Alexander briefly invokes cumulative error. But the record does not show significant error, let alone compounding errors. *See United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012).

### III.     Conclusion

For the above reasons, we **AFFIRM** the judgment of the district court.